IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| PROFESSIONAL VIDEO | : | |
| ASSOCIATES, INC. | : | Case No. 95-016 PJW |
|     Debtor, | : | |
| | : | |
| MICHAEL J. HORAN | : | Adversary Proceeding No. |
| | : |    A98-247 |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | Civil Action No. 07-629 GMS |
| WILLIAM DANTON, | : | |
| PROFESSIONAL VIDEO | : | |
| ASSOCIATION, INC., and VIDEO | : | |
| LOTTERY CONSULTANTS, INC. | : | |
| | : | |
|     Defendants. | : | |

BRIEF OF DEFENDANTS/APPELLEES
WILLIAM DANTON AND VIDEO LOTTERY CONSULTANTS

**PHILLIPS, GOLDMAN & SPENCE, P.A.**
Stephen W. Spence
1509 Highway One
Dewey Beach, DE 19971
302-226-4200
Attorneys for Defendants,
William Danton and VLC

**LEVY, ANGSTREICH, FINNEY,
BALDANTE, RUBENSTEIN & COREN, P.C.**
Steven E. Angstreich
1616 Walnut Street, 5th Floor
Philadelphia, PA 19103
215-735-1616
Attorney for William Danton and
Video Lottery Consultants, Inc.

# TABLE OF CONTENTS

PAGE

A. TABLE OF CONTENTS..............................................2

B. STATEMENT OF THE BASIS OF APPELLATE JURISDICTION........3

C. STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF REVIEW...............................................5
    1. The Applicable Standard of Review................5
    2. Issues Presented..............................7

D. STATEMENT OF THE CASE..........................................7
    1. Nature of the Case; Course of Proceedings; Disposition Below..................................7
    2. Statement of the Facts..........................8

E. ARGUMENT......................................................11
    1. The Bankruptcy Court did not Err in Finding the Settlement Agreement Conveyed Only Distribution Rights...........................................11
    2. The Bankruptcy Court Did Not Err in Finding that the Pierce Product was not an upgrade, update, modification or new Version and thus Appellees did not Breach the Settlement Agreement...............13

F. CONCLUSION....................................................15

# TABLE OF AUTHORITIES

Fed.R.Civ.P.52(c) .......................................3

Fed.R.Bankr.P.7052.......................................3

28 U.S.C.§158(a)(1)......................................5

Troisio v. E.B. Eddy Forest Products, Ltd., 302 B.R. 808, 811 (D.Del 2003) .....................................6, 7

Data Systemes Network Corp. v. Memorex Telex Corp., 242 B.R. 826, 830 (D.Del 1999) ............................6

Law Debenture, Trust Co. of New York v. Northwestern Corp.,365 B.R. 453, 456 (D.Del. 2007)....................7

B.   STATEMENT OF THE BASIS OF APPELLATE JURSIDICTION

Appellant/Plaintiff, Michael J. Horan ("Horan") initiated an adversary proceeding in the United States Bankruptcy Court for the District of Delaware on or about April 17, 1998 (almost ten years ago) against the Defendants. A trial on the matter was held and at the conclusion of Horan's case, the Honorable M. Bruce McCollough entered judgment in favor of Defendants. On June 4, 2001, Judge McCollough issued an Order entering judgment in favor of each of the named Defendants on all three counts of the Complaint pursuant to Fed.R.Civ.P.52(c) and Fed.R.Bankr.P.7052. Horan appealed that Order to the District Court where the Honorable Gregory M. Sleet entered an Order dated January 27, 2005 affirming, in full, all actions of the Bankruptcy Court. Horan then appealed Judge Sleet's Order to the Third Circuit.

The Third Circuit, in an April 3, 2006 opinion, affirmed the Bankruptcy Court and District Court's decision finding "the Bankruptcy and District Courts did not err in their construction of the settlement agreement as it relates to the Holniker software.[1]" It also affirmed the lower courts' finding that the fraud claim was without

---

[1] Stephen Holniker, through his company Amusement World, Inc. in 1995 developed software to make Elimination Draw Poker operational.

3

foundation. However, the Third Circuit remanded Horan's claim that Appellees/Defendants failed to convey the rights in software created by software developer Don Pierce for Fortune Entertainment Corporation. Specifically, the Third Circuit remanded the issue of "whether something that is 'inoperable' counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be 'hook[ed]…up.'" The issue was remanded so that the District Court "which may choose to remand to the Bankruptcy Court" may determine the facts relevant to the Pierce product. The facts to be determined, as directed by the Third Circuit, include the product's effectiveness; its value to PVA, FEC and Horan; and whether it can be considered an upgrade, etc." (Appendix 1 to Appellant's Brief).

On April 5, 2006, the District Court remanded the issue to the Bankruptcy Court. The matter, upon Plaintiff's motion for recusal, was reassigned from the Honorable Peter J. Walsh to the Honorable Brendan Linehan Shannon of the Bankruptcy Court for the District of Delaware on August 31, 2006. Plaintiff then filed a Motion to Reopen the Record, which was opposed by Defendants. Defendant Professional Video Association ("PVA") simultaneously filed a Motion to Dismiss it from the case.

4

Both motions were heard before Judge Shannon on January 11, 2007. (Appendix 3 to Appellant's Brief). PVA's motion was granted and the Defendant was dismissed from the case. As for Plaintiff's motion to reopen the record, his Honor directed the parties to file briefs with respect to the issue of whether the Pierce program was an "upgrade, update, or modification" as set forth in the Settlement Agreement. Following the submission of briefs on August 24, 2007, Judge Shannon entered an Order and issued an accompanying Memorandum Opinion finding:

1. The Pierce Product does not constitute an upgrade, update, modification, or new version of the Software Assets for the purpose of the Settlement Agreement.

2. Defendants, William Danton and VLC, did not breach the Settlement Agreement by failing to turn over the Pierce Product.

(Appendix 2 to Appellant's Brief). Horan filed this proceeding as an appeal from a final order of a Bankruptcy Court pursuant to 28 U.S.C. §158(a)(1)

C. STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF REVIEW

1. The applicable standard of review.

In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *Troisio v. E.B. Eddy Forest*

5

*Products Ltd.*, 302 B.R. 808, 811 (D.Del. 2003). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercised plenary review of the trial court's choice and interpretation of legal precepts to the historical facts." *Id*. Pursuant to Federal Rule of Bankruptcy Procedure 8013:

> "On an appeal the district court…may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

Under the clearly erroneous standard of review, a strong presumption exists in favor of the trial court's findings of fact and the burden of proof is on the party attacking their validity." *Data Systemes network Corp. v. Memorex Telex Corp.*, 242 B.R. 826, 830 (D.Del 1999).

It is the responsibility of an appellate court under the clearly erroneous standard to accept the ultimate factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *Troisio v. E.B. Eddy Forest Products*

6

*Ltd.*, 302 B.R. 808, 812 811 (D.Del. 2003). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Law Debenture, Trust Co. of New York v. Northwestern Corp.*, 365 B.R. 453, 456 (D.Del. 2007).

### 2. Issues Presented

The issues presented before the Court are as follows:

1. Whether the Bankruptcy Court clearly erred in finding that Plaintiff was entitled only to Distribution Rights of the Software Assets; and

2. Whether the Bankruptcy Court clearly erred in finding that the inoperable Pierce Product was not an upgrade, update, modification or new version of the Software Assets for purposes of the Settlement Agreement.

## D. STATEMENT OF THE CASE

### 1. Nature of the Case; Course of Proceedings; Disposition Below

This matter stems from an adversary proceeding wherein Appellant Horan alleged in part that Defendants/Appellees breached a Settlement Agreement entered between the parties. The Settlement Agreement provided Appellant with distribution rights to Software Assets regarding an Elimination Draw Poker game he invented. The proceeding went to trial and the trial Court found in favor of the Defendants. Since then Horan has filed appeals first to

the District Court, which affirmed the trial court's decision, and subsequently to the Third Circuit. The Third Circuit affirmed in part but remanded to the District Court the issue of whether the inoperable software created by Don Pierce "counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be hooked up." The District Court remanded the issue to the Bankruptcy Court. The Bankruptcy Court, after conducting a hearing and accepting briefs on the issue, determined that the Pierce product was not an "upgrade, update, modification or new version of the Software Assets" and that Defendants did not breach the Settlement Agreement by failing to turn over the Pierce Product to the Plaintiff. (Appendix 2 to Appellant's Brief). Horan now appeals this finding of the Court.

   2. **Statement of the Facts**

   On or about February 27, 1997, the parties entered into a Settlement Agreement that was approved by the Bankruptcy Court on March 4, 1997. (JAPP 0115-0129). Pursuant to paragraph 1(a) of the Settlement Agreement, Plaintiff is entitled to receive:

> "all exclusive distribution and all other related rights in and to the Software Assets, including any and all upgrades, updates, modifications, the name and/or new versions in the following exclusive locations, which rights include the exclusive right to

sell, advertise, distribute, demonstrate, manufacture and duplicate the Software Assets." (JAPP 0116).

The term "Software Assets" is defined in the Background paragraph of the Settlement Agreement as: "Elimination Draw Poker" together with the Patent, related copyrights, rules, design, format, system and related hardware (the Software Assets)" (JAPP 0115). Elimination Draw Poker is an electronic game developed by Horan in the 1980's whereby people would be able to conduct a poker tournament in a poker machine. (JAPP 0358:13-24 -0360: 14).

At issue is whether certain software developed by Don Pierce is an "upgrade, update, modification" to the Software Assets. The District Court, in affirming the trial Court's judgment in favor of Defendants found that Mr. Pierce's software was not operational and was not a "new version" of the Software Assets:

> "…Pierce testified at trial that his software was a demonstration model and not operational. In addition, James Maida, president of GLI, testified that GLI performed tests on the device submitted by Pierce. The test results showed that Pierce's device was inoperable and that GLI "couldn't get it to first base"…Pierce's Elimination Draw Poker software, therefore, is not a new version of the Software Assets". JAPP 0016

Horan appealed the District Court's affirmation and the Third Circuit affirmed in part and remanded on the issue of whether the Pierce software that is "inoperable" counts as

9

an upgrade, update, modification or new version of the Software Assets. Specifically, the Third Circuit stated:

> "The District Court found that because the software was not operational, it was not a "new version" of the Software Assets. Therefore, it reasoned, there was no breach of the settlement agreement. However, the findings on this point beg the question whether something that is "inoperable counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be "hooked…up"..
>
> We will, therefore, vacate and remand on this point so that the District Court, which may choose to remand to the Bankruptcy Court, may determine the facts relevant to the Pierce product. These facts include the product's effectiveness; its value to PVA, FEC, and Horan; and whether it can be considered an upgrade, etc." (Appendix 1 to Appellant's Brief).

On remand, the Bankruptcy Court rejected Appellant's argument that it could have developed hardware to make the Pierce Product operable finding that Appellant was not entitled to do so under the terms of the Settlement Agreement but that he was only entitled to distribution rights. (Appendix 2, p.13). Accordingly, the Court stated:

> "if the Defendants had turned over the rights to the Pierce Product…the Plaintiff's only option would have been to distribute an inoperable product. This clearly conflicts with purpose of the Settlement Agreement and yields the conclusion that the Pierce Product, though "99.9 percent complete", was not an upgrade, update, modification, or new version of the Software Assets as those terms were used in the Settlement Agreement." (Appendix 2, p.13).

The Bankruptcy Court also found that because the Pierce product was inoperable it could not be considered an "upgrade" or "update." Further, because the product was neither operable nor developed from the Elimination Draw Poker's original source code, it was not a "modification" or "new version". Plaintiff has appealed the Bankruptcy Court's determination that he was only entitled to distribution rights and that the Pierce product is not an upgrade, update, modification or new version of the Software Assets, and that, consequently, Defendants did not breach the Settlement Agreement.

E.  **ARGUMENT**

**1. The Bankruptcy Court did not err in finding the Settlement Agreement conveyed only distribution rights.**

Plaintiff/Appellant claims that the Bankruptcy Court erred in concluding that the Settlement Agreement provided Plaintiff only with distribution rights to the Software Assets. The Settlement Agreement itself states:

> a. PVA, with the joinder of Danton, hereby grants and conveys to Horan, all exclusive distribution and all other related rights in and to the Software Assets, including any and all upgrades, updates, modifications, the name and/or new versions in the following exclusive locations, which rights include the exclusive right to sell, advertise, distribute, demonstrate, manufacture and duplicate the Software Assets in only the following

>locations…Horan's exclusive distribution rights arising out of the grant of the rights to Horan by PVA of the Software Assets as set forth herein include, but are not limited to: any proceeds of sales, advertising, sponsorship and/or manufacturing which arises or results from the sale distribution, demonstration or duplication of the Software Assets by Horan in the Exclusive Locations…The Parties further agree and acknowledge that the grant of exclusive distribution rights as set forth herein to Horan by PVA are irrevocable… any ." (JAPP 0116).

The term "Software Assets" is defined as "Elimination Draw Poker" together with the Patent, related copyrights, rules, design, format system and related hardware". (JAPP0115). The clear language of the Agreement fully supports the Bankruptcy Court's determination that Plaintiff was only entitled to distribution rights of the Software Assets.

Plaintiff's contention that the Third Circuit rejected this argument is incorrect. The excerpt of the Third Circuit transcript cited by Plaintiff is merely discussion between the Court and Appellees' counsel. It is not the Court's findings, opinions, or determination but rather the Court's inquiry. Moreover, Appellant failed to attach the transcript to the Appendix so that the full context of the inquiry cannot be read. Regardless, a reading of the Agreement itself supports the determination that it only conveyed distribution

12

rights to Appellant. Moreover, the Third Circuit did not direct the Court to apply any specific facts on remand, just that the Court decide the specific question posed on remand.

> **2. The Bankruptcy Court did not err in finding that the Pierce Product was not an upgrade, update, modification or new version and thus Appellees did not breach the Settlement Agreement.**

The Bankruptcy Court properly determined that the Pierce Product, "though 99.9 percent complete" was not an upgrade, update, modification, or new version of the Software Assets. In reaching its decision, the Court applied the common definitions of the terms "upgrade", "update", "modification" and "new version". As pointed out by the Court, the fact that the program was inoperable defeats its ability to be an "upgrade" as it did not improve Elimination Draw Poker or raise it to a higher level. Nor could it be an "update" as it did not bring Elimination Draw Poker "up to date". Moreover, the record supports the Court's finding that, in addition to not being operable, Mr. Pierce never had access to the Elimination Draw Poker source code and therefore it could not be a "modification" or a "new version" of the Software Assets.[2]

---

[2] At trial Mr. Pierce testified:

> Q. Were you ever provided a copy of the patent?

13

Plaintiff also argues that the Bankruptcy Court "erroneously concluded that the District Court ruled that the Pierce Product was not operational." In fact, the District Court states in its opinion:

> Horan next asserts that the Appellees, through FEC, developed operational software in 1999 but have not turned the software over to him, thereby breaching the Settlement Agreement. Horan contends that Pierce created a "new version" of the PVA Elimination Draw Poker game for FEC but was unable to configure the software to any specific hardware because FEC did not provide proper hardware. Horan maintains that this is undisputed evidence that the appellees have breached the Settlement Agreement. The court is not persuaded. First, as previously discussed, Pierce testified at trial that his software was a demonstration model and not operational. In addition, James Maida, president of GLI, testified that GLI performed tests on the device submitted by Pierce. The test results showed that Pierce's device was inoperable and that GLI "couldn't get it to first base"…Pierce's Elimination Draw Poker software, therefore, is not a new version of the Software Assets. JAPP 0016

It is evident that the District Court rejected Plaintiff's argument that Pierce's product was operational but for the hardware provided by FEC; the same argument Plaintiff attempts to assert again in this proceeding. Moreover, the Third Circuit, contrary to Plaintiff's assertion, acknowledged that:

---

> A. We were told we were going to over and over – no, not a patent. We were told we were going to get a source code from the other machine over and over again, but we had to write it from scratch. (JAPP0196)

"District Court found that because the software was not operational, it was not a "new version" of the Software Assets. (Appendix 1, p.7). Therefore, it reasoned, there was no breach of the Settlement Agreement. However, the finding on this point beg the question whether something that is "inoperable" counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be "hooked…up"". (Appendix 1, p.7).

The Bankruptcy Court answered that question adversely to plaintiff based upon the evidence of recent arguments of counsel. Therefore, the Court's determinations were not clearly erroneous but supported by the record and should be upheld by this Court.

F. CONCLUSION

For all the foregoing reasons, Appellees/Defendants respectfully request this Honorable Court deny Plaintiff's appeal and affirm the findings of the Bankruptcy Court.

Respectfully submitted,

**PHILLIPS, GOLDMAN & SPENCE, P.A.**

BY: /s Stephen W. Spence
    Stephen W. Spence
    1509 Highway One
    Dewey Beach, DE 19971
    302-226-4200
    sws@pgslaw.com
    Attorney for William Danton and
    Video Lottery Consultants, Inc.

```
                           LEVY, ANGSTREICH, FINNEY,
                           BALDANTE, RUBENSTEIN & COREN, P.C.

                           By: /s Steven E. Angstreich
                               Steven E. Angstreich
                               1616 Walnut Street, 5th Floor
                               Philadelphia, PA 19103
                               215-735-1616;215-545-2642(fax)
                               sangstreich@levyanstreich.com
                                Attorney for William Danton
                                and Video Lottery
                                Consultants, Inc.
```

Dated:  March 19, 2008

**PROOF OF SERVICE**

On March 18, 2008, I served a true copy of the foregoing Brief of Defendants/Appellees, William Danton and Video Lottery Consultants upon the following via regular mail:

| | |
|---|---|
| David B. Stratton, Esquire<br>Pepper Hamilton LLP<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>Wilmington, De 19899-1709 | Louis M. Tarasi, Jr., Esquire<br>The Tarasi Law Firm, P.C.<br>510 Third Avenue<br>Pittsburgh, PA  15219 |

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: /s Steven E. Angstreich
    Steven E. Angstreich
    1616 Walnut Street, 5th Floor
    Philadelphia, PA 19103
    215-735-1616;215-545-2642(fax)
    sangstreich@levyanstreich.com
     Attorney for William Danton
     and Video Lottery
     Consultants, Inc.

17